We have 5 cases on the calendar this morning, 4 of them patents, 1 submitted on the brief and 1 from a district court and we have a claims case. Our first case is R2 Semiconductor v. Intel Corporation, 2019-1031, etc. Mr. Fairholtz. Good morning, your honors. May it please the court. There is one thing that is obvious in this matter, and that's that everyone wants to put as much circuitry as possible on an integrated circuit. That's why we've developed system-on-chips over the years. But wanting to do something is a far cry from showing how to do it. And in this case, that's the crux of why an RGU PTAB committed error. In general, it referred to aspirational statement or a one-sentence statement that used the word chip. And then said, well, everyone would have known how to do that. But if something is anticipated or obvious, the reason for creating it isn't necessarily the point if it is or would have been. When we're talking about obviousness, every one of these briefs that says something that is obvious gives me a start because we're talking about the past. Was or would have been obvious. That's correct, your honor. If it is, the reason isn't relevant, is it? Yes, your honor. Why is it? Because you need to go to the time period in which the patent issue was filed, in this case, the 250 patent. The 250 patent, for the very first time, did disclose how to put some spike protection circuitry within, inside, an integrated circuit. No one had ever disclosed how to do that before. And there's no single reference that even gets close to describing this solution implemented on an integrated circuit, except Intel. So it was unreasonable for the board to see Hibino saying, do all this on a chip? Yes. Shekawat saying, do this all on a single die. And it's just totally unreasonable for the fact finder to take these references at their word? I guess that's your position, and that's what we must say if we're going to reverse that fact finding. Under Section 311, the IPR task, the task of the board, the IPR, is to look at the prior art. Expert testimony can interpret that, can talk about it, but it can't make up a whole new solution that's not put in there for how to do something. Can't we, I don't know, start with an assumption that if a document says you can do these things on a single chip, you can do these things on a single die, that presumptively, you know, we can take that, that skilled artisans at that time had knowledge of how to do that? Absolutely not. I mean, let's take your word for it. I mean, that's, there's nothing here that discloses the circuitry that can be used and how to use it so that you don't get your chip to blow up. I don't understand. Are you saying that every sentence that a prior art reference says, we can't take it at its word? No, no, Your Honor. I'm not saying that. Well, that's what you're asking us to do for these particular sentences and these particular prior art references. No, the question is, what does the art disclose? It discloses we can do this on a die. That's all it discloses. That's like saying it would be great to have a time machine. You're not saying how you do it. They're aspirational statements. And so it's not so much a question of looking at the sentence and saying, I disagree with the sentence or not. I'm not taking the sentence. The question is, what does the sentence disclose? You're saying it's not enabled. Right. I mean, if you look at both of these. So your argument isn't, like you say in your brief, that it doesn't disclose it. Your argument is that it does disclose it, but it doesn't enable it? No. It doesn't disclose it, and thereby, it's not enabled, is what at least I interpreted the question. And you're saying just because it says it, it doesn't disclose it? Just because it says do these things on a single chip. Well, Habino expressly discloses implementing the snubber and regulatory circuitry on a chip, quote, on a chip. So what? I have to assume that's not on a chip? Yes. Well, if you explain to a skilled artist how to do it on a chip, therefore, I should disregard the disclosure in its entirety? No. But you should look at the whole disclosure, Your Honor. And if you look at that sentence, it's referring to figures in which the snubber circuit is connected via bond wires, not on an integrated circuit. And so the very sentence that uses the word chip is referencing an illustration. There's many illustrations, but say figure 7B uses the word on a chip. And if you look at the figure, you can see that there's bond wires. It's not the snubber. The snubber is not within the chip that has a voltage regulator. It's connected by a bond wire. They're on the same substrate, but they're not the same integrated circuits. And that's the whole crux. Now, I think it's relevant, Your Honors, that... Well, OK, so what you've just said, and honestly, I find this about your pretty much all of the issues that you appeal, is that you've made an argument for why in a de novo world maybe the reference shouldn't be interpreted that way. But your problem, though, is the board did interpret the on a chip language as implicating integrated circuitry. Your bond wire argument is not lost on me, but the board went the other way. The presence of bond wires would suggest that they're not all on a chip. I mean, it doesn't say on a substrate. It says on a chip. Well, chip has many meanings that use different ways in the industry. And the board gets substantial evidence to decide which one applies in a given circumstance. Your problem is you want me to review these very dense and detailed factual issues de novo. But you don't get de novo review. You get substantial evidence review. And I don't see anything in your briefs that makes it such that I could reverse the board and say there's no substantial evidence. We're arguing right now about something about which maybe reasonable minds could disagree. But it's a substantial evidence review. There's no disclosure, your honor, of how to put this circuitry on an integrated circuit. It had been. Did you raise specifically below and on appeal to us the argument that even if the reference discloses that the reference doesn't enable it? No, I don't believe so. I just answered his honor's question. Yes, but then that argument to me doesn't unfortunately overcome your problem in this case. Well, again, for IPRs under 311, the rule is a petitioner in an inter partes review may request to cancel as unpatentable one or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications. The practice guide that goes with that, the PTO, says, quote, because an inter partes review may only be requested on the basis of prior art consisting of patents or printed publications, expert testimony cannot take the place of disclosure from patents or printed publications, close quote. And what has been supplied, the only place you find the description of this is in conclusory expert testimony. There is no disclosure in ABINA of this number circuitry or this number circuitry in the 250 patent or this number circuitry on a single IC. And our argument on appeals, your honors, is that it doesn't disclose the use of the technology on an integrated circuit or how to do that. The just mentioning it could be done in an aspirational statement is not disclosing how to do something. What about Shekelot, which says on a single die? Well, Shekelot, I think your honor is referring to the following sentence. In various embodiments, this is the second to last paragraph of the patent. The last one is the typical lawyer disclaimer that this is everything. But the second to last paragraph says, quote, in various embodiments, all or a portion of power converter systems, 410, 510, 10, 110, 210, shown in figures 1, 3, and 5, and 6, can be implemented on a single or multiple semiconductor die as commonly referred to as a chip or discrete components. That's the sentence that does not disclose how to put Shekelot on an integrated circuit. It doesn't. That's enablement. That's not disclosure. It is, in fact, disclosed. You're saying it wouldn't be enabled. That would have required assessing whether a skilled artisan would know how to do it based on that disclosure. That's not the issue for this court. That wasn't an issue you raised below. With respect to our argument with the expert on Shekelot, well, first of all, I don't believe the board relied on that statement about a single die. So the board didn't even rely on that statement. I know that Intel does. But what the board relied on was one sentence concerning the word MOS. And this is at A136. Quote, because Shekelot expressly contemplates implementing the disclosed invention in MOS technology, i.e. on a single die. That's what the holding was of the PTAB. Well, the reference to MOS technology in Shekelot is not to the snubber circuitry. And the error in the reasoning of the PTAB is to the assumption that the fact that you could do MOS for one aspect, because it's already in the prior art, does not mean that you can do every aspect within a single integrated circuit. There's no description of that. Counsel, you're into your rebuttal time, which you wanted to save. Yes, I'll reserve to us. Thank you, Your Honor. We'll save it for you. Mr. Summerskill. Thank you, Your Honor. May it please the court, Michael Summerskill on behalf of Apelli Intel Corporation. This is a case in which R2 argued to the board that the 250 patent had two core points of novelty. The PTAB properly found those allegedly novel limitations to be known and disclosed in the art, and then R2 abandoned that novelty story and now argues on appeal that six different limitations are the features that make it Just to be clear, I'm wondering if you're really intending to go into six limitations, since all he addressed in oral argument is this one. I am not, Your Honor, and I'll jump right to the integrated circuit limitations. So I'll start with where Mr. Verhoeven started, which is that the prior art references are merely aspirational. And I believe he was making that argument specifically with respect to the Shekowat reference. I'll start there. As Judge Chen noted, references are presumed enabled. That's the In Re Antor case, Federal Circuit 2012. And prior art references need not be enabling on their own. The question is, what do they suggest to a person of ordinary skill in the art? So you look to the express disclosure and then what a person of ordinary skill in art would understand from that reference. And here there is substantial evidence that a person of ordinary skill in the art would understand how to implement, take the express disclosure of either Shekowat and Hibino and implement a voltage regulator on the same die with a snubber circuit. Dr. Lieb testified to that. That's Appendix 4594, paragraph 32. And then his testimony is supported by other references, including the Larson reference, which explicitly put a snubber circuit and a voltage regulator on the same chip nine years before the 250 patent. And I think Mr. Verhoeven said in a number of instances that the references don't explain how to do this, that it's in there but they don't explain how to do it. Well, they're no more aspirational than the 250 patent is itself. The 250 patent in the written description mentions putting them on the same chip three times. In each instance, it doesn't say how to do it. It merely mentions doing it. And so column 16, line 56 is one of those instances. This is the 250 patent. As shown, the spike protection circuit 1910 is located on the same integrated circuit 1930 as the series and shunt switch elements. That's what it says. It doesn't explain how to do it. It says you do it. In other words, it's assuming that a person of ordinary skill in the art would understand how to do it. And so in Shakowat, you've got an explicit reference to putting the voltage regulator and snubber circuit on the same chip. And there's substantial evidence that a person of ordinary skill in the art would understand how to do that. Now, let me step back to Mr. Verhoeven's argument on bond wires with respect to the Hibino reference. Now, again, the Hibino reference explicitly describes placing a snubber circuit and a voltage regulator on a chip. Dr. Lieb testified that Hibino's disclosure that a person of ordinary skill in the art would understand that to be referring to placing them on an integrated die. And the board evaluated Intel's evidence, evaluated the patent owner's evidence, and made a classic substantial evidence determination. Now, R2 argues that— Why would there be bond wires if it was all truly on a single chip, an integrated circuit? A couple of things, Your Honor. It doesn't make sense, does it? Well, the presence—I think the issue, Your Honor, is that the presence of bond wires—and this is what the board found. The presence of bond wires doesn't negate other connections. So what, belts and suspenders kind of connections? No, but bond wires can be used, and Dr. Lieb testified about this. Bond wires can be used to make internal connections on their way out to external connections. And the presence of bond wires on a device doesn't necessarily mean it's not an integrated circuit. Dr. Lieb testified—and this is Appendix 4529. Isn't your interpretation that bond wires are not being used to connect the snubber circuit to the voltage regulator? Well, actually, Your Honor, if you look at Dr. Lieb's testimony, and then we look at Figure 7B, which is the figure at issue, Dr. Lieb testified that the connections P, U, and N are the traces of an integrated circuit. And then if you look specifically at Figure 7B, you can see that the snubber circuit 300 is connected to trace P, and the switching circuitry 130 is connected through another circuit to P. And so they're both connected via trace P. And that's consistent with what is in Hibino. Paragraph 102 of Hibino, Appendix 3623, states, As shown in Figure 7B in this example, the snubber circuit 300 is directly connected to the wiring patterns P and N. And then it says each of the switching devices 130 is connected to an associated one of the wiring patterns P and U. So they're both connected to the wiring pattern P, which Dr. Lieb testified is the wiring pattern of an integrated circuit. And so what Hibino expressly states- What about the rest of that paragraph 102 at the bottom of the last part of the sentence, where it explains about the switching device above the wiring pattern U is connected to the snubber circuit by an associated one of the bond wires? Yes, Your Honor. What does that mean, then? Well, I think that's referring to- See, there are two- In Figure 7B, there are two switching devices, 130. And the lower one on the lower half of the figure is connected to the snubber circuit 300 via a bond wire. The top one doesn't have a bond wire over to the snubber circuit 300. And so what Hibino is discussing there is that basically you can have multiple different connections. And if you look earlier in Hibino, it talks about the fact that there can be multiple different connections. I think, Your Honor, the bottom line is that Hibino expressly discloses putting them on a chip. And what the board found is that simply showing bond wires doesn't negate that express disclosure. And so, again, this was a classic substantial evidence determination. So Figure 9 is the same way, though. It says Figure 9 is an example of a chip arrangement with a snubber circuit and inverter circuit. It goes through, and then when you look at Figure 9, everything is connected to everything else via bond wires. So it says it's on a chip, but then it has a bunch of bond wires. So everything is connected via bond wires. So your Figure 7 description doesn't apply to Figure 9. I think that's true, Your Honor, but the focus of the argument has been on 7B. And, of course, every embodiment in Hibino doesn't need to be on a chip. I think what Hibino says, and this is in paragraphs 98 and 99 of Hibino, is that you can make these connections in a host of different ways. And I think it's important to come back to what the reference specifically discloses, which is that it's on a chip. And Dr. Lieb testified one of ordinary skill in the art would understand that to mean on an integrated circuit die. And so the fact that you've added bond wires in some embodiments doesn't negate the fact that it's on a chip. I think R2's argument to the contrary is like saying because a house has a side door, it must not have a front door even though the description of the house says it has a front door. The presence of bond wires doesn't negate other connections. And Dr. Lieb has testified that those traces, P, U, and N, are the traces of an integrated circuit. Now, the final point I'll address, unless you have other questions, Your Honor, is Mr. Verhoeven's argument that we're somehow only relying on expert testimony. And that's simply not accurate. Habino expressly discloses on the same chip. Shakowat expressly discloses on the same chip. And Dr. Lieb, a 27-year tenured professor of MIT, reviewed those references and testified that a person of ordinary skill would understand that to mean on an integrated circuit. So he's expressly relying on the primary references. We're not simply relying on expert testimony. You're just using an expert to help the board understand what the references do in fact disclose. That's pretty standard. That's correct, Your Honor. Okay. Thank you, Your Honor. Thank you, counsel. Mr. Verhoeven has four minutes plus if he needs it. Three minutes plus. Thank you, Your Honor. When counsel was just talking and answering questions, we heard a lot of references to Dr. Lieb. And I heard the phrase, quote, assuming Dr. Lieb is assuming a portion of ordinary skill in the art would know how to do it. Well, the how is the question for obviousness. Like I said, everybody wants to put stuff on an integrated circuit. The challenge is, how do you do it? What's the priority date for this patent? 2009? I believe so. Yes, Your Honor. December 23rd, 2009. So as of that date, nobody had put this protection, this circuitry protection, together with the switching device on an integrated circuit. So all we have is Dr. Lieb's testimony that a person would know how to do it. Well, no, we have the presumption that references are enabled, that you didn't introduce any evidence to rebut. It's not even disclosed. If we disagree with you as to whether it's disclosed, your argument, as I understood it, has been even if it's disclosed, it's not enabled. Yes, that's correct. That's why we started early. But what a reference discloses is a question of fact to which we give the board substantial evidence discretion. Yes, but the board, as Your Honor's well know, because I've read it in opinions written, has to explain what, how, and why it's finding that something is obvious. And let's take Dino here, and we're looking at what the board says, not what the attorney argument is. And the board said he agrees with the expert that the use of bond wires is not inconsistent, not inconsistent with doing it on an integrated circuit. And then it continues. Dr. Pedram, that's our expert. Dr. Pedram, however, does not explain, and it is not clear from Abino that the bonding wire referred to in that excerpt of Abino is used in every connection between this number and regulatory circuitry. What we have here is the PTAB has switched the burden of proof. The burden of proof is supposed to be on the petitioner and has said, well, you haven't proven the absence of something. It's completely not the way the analysis is supposed to go. It's supposed to be the plainest burden of proof to show the disclosure and explain how, explain why people would put things together. It's just not existing in here. Does your 250 patent disclosure disclose those kind of details? Absolutely. It's the circuitry. So the question is, what I heard is any person of skill in the art would know how to do it. Cite Dr. Lieb. But no one disclosed how to do it until 250. And 250 came up with this elegant circuitry that's simple, that will take care of spike. Here's the problem. I don't really see the nuts and bolts in your written description for how you, in 2009, went through all the fascinating details to figure out how to put a snuffer circuit and this voltage regulator on the same chip. The 250 patent talks about the fact that when you put stuff on chips and as chips become smaller and smaller, they become more susceptible to blowing up. And this invention, and if you put this snuffer circuitry on a chip, in the past snuffer circuitry, it would blow up. And so what 250 discloses is a way to avoid the spikes so that the system doesn't blow up when it's on an integrated circuit. That's the how. And it's disclosed in the actual claim. Unless you say your time has expired. So we will take the case under a vote. Thank you.